IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN LINDSEY, #R69477 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-00541-MJR |
| | ) |
| LT. BRADLEY, OFFICER BELFORD, | ) |
| K. DEAN, DONALD GAETZ, | ) |
| SARAH JOHNSON, and S.A. GODINEZ, | ) |
| | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff John Lindsey, an inmate at Pinckneyville Correctional Center ("Pinckneyville"), brings this action for deprivations of his constitutional rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Plaintiff also asserts claims under the Illinois Religious Freedom Restoration Act ("IRFRA"). Specifically, Plaintiff alleges that Defendants violated his right to freely exercise his religion when they forced him to cut off his dreadlocks. Moreover, Plaintiff claims that Defendants actions were racially motivated and violated his Fourteenth Amendment right to equal protection under the law. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from

such relief. 28 U.S.C. § 1915A(b). Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action fail to state a claim and are thus subject to dismissal.

**The Complaint**

Plaintiff states that he is a Rastafarian and that his religion requires him not to use a razor on his head. (Doc. 1, ¶ 11). Left uncut, Plaintiff's hair forms dreadlocks.

Plaintiff alleges that on or about October 3, 2012 Defendant Belford approached him and stated, "If I see you with that nigger shit in your head again, I'm going to have your black ass held down and cut you bald and thrown in solitary confinement." *Id*. at ¶ 10. Plaintiff explained to Belford that he is a Rastafarian and that his religion requires him not to use a razor on his head. *Id*. at ¶ 11. Plaintiff claims Belford responded, "I don't want to hear shit about your nigger religion or your black Jesus with dreadlocks, every black mother fucker with dreadlocks I see in their heads I'm having that shit cut off and sent to segregation . . . ." *Id*. at ¶ 12.

The complaint states that on either October 4th or 5th, Plaintiff was called over to "B of I"[1] and told that he needed to have his picture taken, but that they would not take a picture of that "shit" in his head. Plaintiff was advised that his dreadlocks would be cut involuntarily, if necessary. *Id*. at ¶ 14. Plaintiff claims he protested and pulled out an article entitled, "Forcible Cutting of Illinois Prisoner's Dreadlocks Found Unconstitutional" and an opinion from the Seventh Circuit Court of Appeals (which he does not cite). *Id*. at ¶ 15. Defendants Bradley and Belford were called and appeared thereafter. After looking at the article, Defendant Bradley allegedly said, "You niggers think that a nigger loving court is going to validate a fucking nigger religion and I'm going to accept that, if you don't cut that shit when you are called over their

---

[1] Plaintiff does not explain what "B of I" is.

[sic] I'm going to have no problem with having your black ass held down while that shit is cut off your fucking head." *Id*. at ¶ 17.

A few days later, Plaintiff was escorted by Defendants Bradley and Belford to the barbershop and Plaintiff was asked once again whether he was going to follow the order to cut his hair. Plaintiff refused on the grounds that it violated his religious freedom. *Id*. at ¶ 19. Plaintiff was then forced into a chair and held down by Defendants Bradley and Belford while another person cut Plaintiff's dreadlocks. *Id*. at ¶ 20.

Plaintiff filed a grievance, but the grievance was denied on the grounds that his hairstyle presents a safety and security risk. *Id*. at ¶ 22. Plaintiff filed appeals up the administrative chain. *Id*. at ¶¶ 23-29. Plaintiff states that no investigation ever occurred into whether Plaintiff's dreadlocks did, in fact, create a security risk. Defendants Dean, Gatez, Johnson, and Godinez each concurred that Plaintiff's dreadlocks posed a security threat.

**Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to reorganize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has stated the following constitutional and statutory claims:

**Count 1:**     **Free Exercise of Religion under First Amendment**

Plaintiff claims that Defendants Bradley and Belford deprived Plaintiff of his right to freely exercise his religion in violation of the First Amendment when they forced him to cut off his dreadlocks. In addition, Plaintiff claims that Defendants Dean, Gatez, Johnson, and Godinez joined in the violation when they upheld the application of the policy through the grievance procedures.

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see also Sasnett v. Litscher,* 197 F.3d 290, 292 (7th Cir. 1999); *Al-Alamin v. Gramley,* 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). On the other hand, a prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner,* 482 U.S. at 90; *Al-Alamin,* 926 F.2d at 686.

Illinois does not have an outright ban on long hair, although "case law indicates that a ban on long hair, including dreadlocks, even when motivated by sincere religious belief, would pass constitutional muster." *Grayson v. Schuler*, 666 F.3d 450, 452 (7th Cir. 2012) (collecting cases). Instead, Illinois inmates "may have any length of hair, sideburns, mustaches, or beards so long as they are kept neat and clean and do not create a security risk." 20 Ill. Admin. Code 502.110(a). The problem with an ad hoc policy, such as this, is that it can be used as a shield, ex post facto, to justify applications of the policy that may have been arbitrary or motivated by animus towards particular religious or racial groups. Although the courts have

generally upheld Illinois prison administrators' decisions that the security risk posed by an individual inmate's hair outweighs the inmate's rights under the First Amendment, *see Grayson*, 666 F.3d at 452, because the policy is applied on an ad hoc basis, the court must conduct an inquiry into the facts of each particular case to ensure that the policy is being applied fairly. *See Reed v. Faulkner*, 842 F.2d 960, 964 (7th Cir. 1988) (directing the district court to examine whether defendants had a legitimate reason for requiring Rastafarians to cut their hair, while American Indians were exempted). At the pleading stage, it is not possible to assess whether the claimed security risk posed by Plaintiff's dreadlocks outweighed Plaintiff's right to practice his religion, nor is it possible to determine if the policy was being applied similarly to similarly-situated inmates. Therefore, this claim shall receive further consideration.

### A. Monetary Damages

A civil rights action against state officials under 42 U.S.C. § 1983 is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Plaintiff asserts claims against Defendants Bradley and Belford, in their individual capacities. The facts recited in the complaint suggest that Bradley and Belford were personally involved in the alleged constitutional violations. In addition, Plaintiff lodges claims against Defendants Dean, Gatez, Johnson, and Godinez, in their individual capacities. Plaintiff maintains that these Defendants are liable because they condoned Bradley and Belford's actions.

Typically, an official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another

guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added).  In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted).

Plaintiff contends that Defendants Dean, Gatez, Johnson, and Godinez, through his grievances, were adequately notified of the *ongoing* constitutional violations and chose to "turn a blind eye."  At this juncture, more facts are needed to determine whether that was in fact the case.  Therefore, Plaintiff may proceed on this claim against all named Defendants, in their individual capacities, at this time.

### B.  Injunctive Relief

Plaintiff also seeks injunctive relief.  Plaintiff has named both Defendant Gatez (warden at Pinckneyville) and Defendant Godinez (director of the Illinois Department of Corrections), in their official capacities.  He may proceed on his claim for injunctive relief against both, in their official capacities. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Count 2:**     **Free Exercise of Religion under RLUIPA**

Although Plaintiff did not invoke the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a)) ("RLUIPA") in his complaint, the Court has added a claim under RLUIPA based on the same facts he alleges to support his constitutional claim. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (advising courts to interpret First Amendment free exercise claims filed by pro se plaintiffs as including a RLUIPA claim, "which

confers greater religious rights on prisoners than the free exercise clause has been interpreted to do"). *Id*.

RLUIPA does not provide a cause of action for money damages against officials in their individual capacity, *see Nelson v. Miller,* 570 F.3d 868, 886-89 (7th Cir. 2009), or official capacity, *see Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011).  Therefore, Plaintiff may not pursue a claim for damages against any Defendants under RLUIPA.  However, Plaintiff may proceed on his claim for injunctive relief under RLUIPA against Defendants Gatez and Godinez, in their official capacities, for the same reasons discussed above.

**Count 3:**     **Free Exercise of Religion Under IFRFA**

Plaintiff also claims Defendants have violated his statutory rights under the Illinois Religious Freedom Restoration Act ("IRFRA). 775 Ill. Comp. Stat. 35 § 15.  IRFRA, like RLUIPA, provides that the government may not "substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." *Id*.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008).  Although the facts supporting the claim under IRFRA are nearly (if not entirely) identical to the facts related to the RLUIPA claim, it appears that both individual-capacity and official-capacity IRFRA claims lie beyond the jurisdiction of this court. A suit against a public employee in his

official capacity is a suit against the state, and the Illinois Court of Claims has "exclusive jurisdiction of all claims" against the state founded upon any law of the State of Illinois. *See Nelson v. Miller,* 570 F.3d 868, 885 (7th Cir.2009); 705 ILCS 505/8(a).  Likewise, federal district courts have barred individual-capacity IRFRA claims, holding that IRFRA claims against state employees are in effect claims against the state. *See Wilkins v. Walker*, 2012 WL 253442, at 3 (S.D. Ill. Jan. 26, 2012) (collecting cases).  As such, the Court will dismiss this claim without prejudice.  Plaintiff may refile these claims in the Illinois Court of Claims.

**Count 4:     Equal Protection Claim**

To state an equal protection claim on the basis of race, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *Id.*  A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir. 1987), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)).

Plaintiff alleges that Defendants' actions were racially motivated and that he was treated differently from similarly-situated white inmates with long hair.  Plaintiff points to examples of racially-charged statements allegedly made by Defendants Belford and Bradley to support his claim that Defendants' actions were racially-motivated.  The statements Plaintiff alleges Defendants Belford and Bradley made are absolutely reprehensible.  If that were all Plaintiff alleged, as uncivilized as the statements may be, they would not amount to a constitutional violation.  *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2002) (holding racially derogatory language "[s]tanding alone . . . does not constitute cruel and unusual punishment, deprive a person of a protected liberty interest or deny a prisoner equal protection of

the laws.") *Id*. However, this is not a case of mere verbal abuse. Plaintiff claims that Defendants carried through on their threats and forced Plaintiff to cut his hair, depriving Plaintiff of his First Amendment right to freely exercise his religion, not because his hair posed a security threat but *because of* his race. At this stage, the Court cannot determine whether that is in fact true. But Plaintiff has stated sufficient facts to support his equal protection claim against Defendants. Plaintiff may proceed on this claim against all of the named Defendants for the same reasons discussed under Count 1.

In summary, Plaintiff shall be allowed to proceed on Count 1 (First Amendment free exercise claim) and Count 4 (Fourteenth Amendment equal protection claim) against all Defendants. He shall also be allowed to seek injunctive relief on Counts 1 (First Amendment claim), 2 (RLUIPA claim), and 4 (Fourteenth Amendment claim) against Defendants Gatez and Godinez, in their official capacities. The claim arising under IRFRA (Count 3) will be dismissed without prejudice.

**Pending Motions**

Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) remains pending and shall be addressed by the Court in a separate order, once Plaintiff has filed the necessary trust fund account statements for the period 11/1/2013 to 5/12/2014 as directed by the Court's Order (Doc. 5) dated May 16, 2014. Plaintiff is reminded that failure to do so will result in dismissal of this action.

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Williams and addressed in a separate order.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages against

Defendants **BRADLEY, BELFORD, DEAN, GATEZ, JOHNSON,** and **GODINEZ** on **COUNTS 1 and 4** shall proceed.

**IT IS FURTHER ORDERED** that Plaintiff may proceed on his claims for injunctive relief on **COUNTS 1, 2, and 4** against Defendants **GATEZ** and **GODINEZ**, in their official capacities.

**Counts 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **BRADLEY, BELFORD, DEAN, GATEZ, JOHNSON,** and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an

appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 9, 2014**

s/ MICHAEL J. REAGAN
United States District Judge
